# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

CHRISTYN FISK,

       Plaintiff,

                                    Case No.

-vs-                                  Hon.

COUNTY OF KENT, KENT COUNTY
COMMUNITY HEALTH AUTHORITY
d/b/a NETWORK 180, SHANA ROSEBUD,
in her individual capacity, NATALIE
CAVAGNETTO, in her individual capacity,
RENAE MCCARTHY, in her individual
capacity, RUFUS CLARK, in his individual
capacity, MOSURAY MCSWAIN, in her
individual capacity, TIMOTHY ORGAN, in
his individual capacity, ANDREA KOSKI,
in her individual capacity, FRANTHEA
PRICE, in her individual capacity,
TAWANA GORDON in her individual capacity,
GERALD BANKSTON, in his individual capacity,
ERIC ENTINGH, in his individual capacity, and
JESSE STRYKER, in her individual capacity

       Defendants.

---

ZACHARY T. RUNYAN (P83671)
**RUNYAN LAW GROUP**
Attorneys for Plaintiff
31211 Jefferson Avenue
St. Clair Shores, MI 48082
(248) 341-0794
zrunyan@runyanlawgroup.com

---

There is no other civil action between these parties arising out of the same transactions or occurrences as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of

any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this court.

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, **Christyn Fisk**, by and through his attorneys, **Runyan Law Group**, and for his Complaint against the above-named Defendants, states as follows:

## PARTIES

1.     Plaintiff, Christyn Fisk, is a resident of the County of Kent, State of Michigan.

2.     Defendant, County of Kent ("Kent County"), is a political subdivision of the State of Michigan duly organized to carry out governmental functions pursuant to the laws of Michigan, one of the functions being to organize, operate, staff, and supervise its Juvenile Detention Center.

3.     Defendant, Kent County Community Health Authority, a/k/a Network 180, is a political subdivision of the State of Michigan duly organized to carry out governmental functions pursuant to the laws of Michigan.

4.     At all relevant times, Defendant Shana Rosebud was an employee of Kent County and working at the Kent County Juvenile Detention Center. Upon information and belief, Defendant Rosebud is a resident within this district and is sued in her individual capacity.

2

5.      At all relevant times, Defendant Natalie Cavagnetto, was an employee of Kent County and working as a supervisor at the Kent County Juvenile Detention Center. Upon information and belief, Defendant Cavagnetto is a resident within this district and is sued in her individual capacity.

6.      At all relevant times, Defendant Renae McCarthy was an employee of Kent County and working at the Kent County Juvenile Detention Center. Upon information and belief, Defendant McCarthy is a resident within this district and is sued in her individual capacity.

7.      At all relevant times, Defendant Rufus Clark was an employee of Kent County and working at the Kent County Juvenile Detention Center. Upon information and belief, Defendant Clark is a resident within this district and is sued in his individual capacity.

8.      At all relevant times, Defendant Mosuray McSwain was an employee of Kent County and working at the Kent County Juvenile Detention Center. Upon information and belief, Defendant McSwain is a resident within this district and is sued in her individual capacity.

9.      At all relevant times, Defendant Timothy Organ was an employee of Kent County and working as a supervisor at the Kent County Juvenile Detention Center. Upon information and belief, Defendant Organ is a resident within this district and is sued in his individual capacity.

10.    At all relevant times, Defendant Andrea Koski was an employee of Network 180, Kent County Mental Health Authority. Upon information and belief, Defendant Koski is a resident within this district and is sued in her individual capacity.

11.    At all relevant times, Defendant Franthea Price was an employee of Kent County and working as a Supervisor at the Kent County Juvenile Detention Center. Upon information and belief, Defendant Price is a resident within this district and is sued in her individual capacity.

12.    At all relevant times, Defendant Tawana Gordon was an employee of Kent County and working at the Kent County Juvenile Detention Center. Upon information and belief, Defendant Gordon is a resident within this district and is sued in her individual capacity.

13.    At all relevant times, Defendant Gerald Bankston was an employee of Kent County and working at the Kent County Juvenile Detention Center. Upon information and belief, Defendant Bankston is a resident within this district and is sued in his individual capacity

14.    At all relevant times, Defendant Eric Entingh was an employee of Kent County and working at the Kent County Juvenile Detention Center. Upon information and belief, Defendant Entingh is a resident within this district and is sued in his individual capacity

15.     At all relevant times, Defendant Jesse Stryker was an employee of Kent County and working at the Kent County Juvenile Detention Center. Upon information and belief, Defendant Stryker is a resident within this district and is sued in her individual capacity

### FACTUAL ALLEGATIONS

16.     Throughout the majority of 2022, Plaintiff was involuntarily confined to the Kent County Juvenile Detention Center.

17.     Throughout his stay, Plaintiff repeatedly exhibited suicidal behavior and expressed his intention to commit suicide.

18.     For example, on June 19, 2022, Defendant Rosebud watched Plaintiff swallow batteries he took from a TV remote.

19.     On June 19, 2022, Defendants McCarthy, Clark, McSwain, and Cavagnetto found Plaintiff with the elastic from his underwear tied around his neck.

20.     When Defendants found Plaintiff, Plaintiff declared that he wanted to kill himself.

21.     On August 8, 2022, Defendant Koski met with Plaintiff for a mental health assessment.

22.     During the meeting, Plaintiff endorsed suicidal ideation and self-harm.

23.     Plaintiff also stated that he needed to go to a mental hospital.

24.     Instead of sending Plaintiff to a mental hospital, Plaintiff was released back into custody.

25.     Additionally, given his history of suicide attempts, and clearly expressed intent to commit suicide, Plaintiff should have been subjected to constant supervision, or alternatively, wellness checks every 15 minutes.

26.     However, Defendant Koski did not recommend such checks or supervision.

27.     On August 23, 2022, Plaintiff attempted to commit suicide by cutting his arm open with a sharp foreign object.

28.     Plaintiff's suicide attempt was observed by Defendant Shana Rosebud.

29.     On August 23, 2022, Plaintiff met with Defendant Nichole Morgan, who evaluated Plaintiff's mental state.

30.     Defendant Morgan released Plaintiff back into custody rather than sending Plaintiff to a mental hospital.

31.     Again, Defendants failed to implement constant supervision and/or 15 minute wellness check protocols.

32.     On August 24, 2022, Plaintiff again repeatedly expressed suicidal ideation.

33.     During classroom time, Plaintiff asked Defendant Entingh if his pencil could be sharpened so he could use it to dig into his arm.

34.    While being escorted from class to his room, Plaintiff made numerous comments about continuing to harm himself, and that staff could do nothing about it.

35.    Plaintiff informed Defendant Stryker that he had a weapon and intended to use it to harm himself.

36.    Plaintiff declared that Defendants would find "more blood, lots more blood".

37.    Later that night, Plaintiff again asked Defendant Entingh to send him to a mental health hospital.

38.    Defendant Entingh informed Defendant Price of Plaintiff's suicidal ideations and his request to go to a mental health hospital.

39.    Despite Plaintiff's suicidal ideation and behavior, Defendants refused to send Plaintiff to the hospital.

40.    Throughout the night of August 24, 2022, Defendant Jackie Carter observed Plaintiff cut himself approximately ten times.

41.    However, Defendants still refused to send Plaintiff to the hospital.

42.    Upon information and belief, Defendants again failed to implement constant supervision and/or 15 minute wellness check protocols.

43.    On September 4, 2022, Defendants Organ, Gordan, Clark, and Bankston were tasked with supervising Plaintiff.

44.    Defendant Organ, as supervisor, failed to ensure that jail staff was properly checking on Plaintiff to ensure that Plaintiff was not harming himself.

45.    At approximately 2:00am, Defendant Organ noticed that Plaintiff had "gotten quiet" and asked Defendant Gordan to check on Plaintiff.

46.    Defendant Gordan entered Plaintiff's room and saw that Plaintiff had tied the elastic band from his underwear around his neck and had cut off oxygen to his brain.

47.    Plaintiff was without oxygen for several minutes due to the band being tied around his neck.

48.    As a result, Plaintiff suffered brain damage.

49.    Defendants Organ, Clark, Bankston, and Gordan failed to properly supervise Plaintiff and failed to ensure that Plaintiff could not access items capable of being used by Plaintiff to commit self-harm.

50.    Given that Plaintiff had previously used the elastic band from his underwear in an attempt to asphyxiate himself, it was reckless for Defendants Organ and Gordan to leave Plaintiff in his room unsupervised and with access to underwear that contained an elastic band.

51.    Shockingly, Defendants still did not send Plaintiff to a mental health hospital.

52.    Instead, Defendant Organ instituted 15-minute checks moving forward.

53.    Given Plaintiff's history of suicide attempts, Plaintiff should have been under 15-minute checks well before September 4, 2022.

54.    Additionally, Plaintiff should have been sent to a mental health facility given his expressed suicidal ideation and history of suicide attempts.

55.    Furthermore, if kept in his room unsupervised, Plaintiff should not have had access to his clothes, especially clothes containing elastic bands.

56.    As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damages, including but not limited to the following:

     a.    Stress;

     b.    Humiliation;

     c.    Embarrassment;

     d.    Outrage;

     e.    Mental anguish;

     f.    Fear and mortification;

     g.    Emotional Damages;

     h.    Economic damages;

     i.    Non-economic Damages;

     j.    Attorney fees and costs;

     k.    Other damages to be discovered through the course of litigation

## CAUSES OF ACTION

## COUNT I - 42 U.S.C. § 1983 CONSTITUTIONAL DEPRIVATIONS
(Against Individual Defendants)

57.    Plaintiff hereby incorporates by reference the preceding paragraphs as though fully stated herein.

58.    Each Defendant is a person within the meaning of the term under 42 U.S.C. § 1983.

59.    Plaintiff was entitled to constitutionally protected rights as a citizen of the United States of America, such as a right to personal safety and right to medical care and protection encompassed in the substantive component of the Due Process Clause of the Fourteenth Amendment.

60.    As an incarcerated prisoner in Kent County Juvenile Detention Center, Plaintiff was also owed rights under the Eighth Amendment ensuring protection from cruel and unusual punishment, including the right to have reasonable measures taken to guarantee his safety and to treat his serious medical needs.

61.    Defendants, as Plaintiff's custodial caretaker, owed Plaintiff an affirmative duty to secure for him the constitutionally protected rights identified above.

62.    Defendants, knowing Plaintiff's medical needs, had a duty under state law, to instruct, supervise, train, direct, and conduct themselves and/or their employees to assure the delivery of medical care and supervision to Plaintiff that is

10

consistent with his health and safety, and which avoided the unreasonable risk of severe harm to him.

63.    The acts and omissions attributable to the Defendants under 42 U.S.C. § 1983 were unreasonable and performed knowingly, deliberately, intentionally, maliciously, with gross negligence, callousness, and reckless indifference to Plaintiff's well-being and in complete disregard of Plaintiff's safety, with wanton intent for Plaintiff to suffer the unnecessary and intentional infliction of pain, failure to obtain timely medical treatment, and failure to properly train, supervise, develop and implement policies providing adequate medical and psychiatric treatment to a prisoner and by reason of which Plaintiff is entitled to compensatory and punitive damages.

64.    The conduct of each Defendant deprived Plaintiff, of his clearly established rights, privileges and immunities in violation of the Fourth, Eighth and Fourteenth Amendments of the United States Constitution and of 42 U.S.C. § 1983.

65.    Defendants' conduct exhibited a deliberate indifference by intentional acts and omissions and otherwise grossly negligent behavior so as to breach Plaintiff's right to basic safety and causing constitutional deprivation of his individual rights.

66.    Defendant not only breached this duty but also acted, under color of law, with gross negligence and deliberate indifference to Plaintiff's safety, protection and medical needs by:

- Failing to properly render the proper medical attention to a prisoner who was diagnosed and generally recognized as mentally ill;

- Failing to properly train correction officers in the evaluation of whether a prisoner needs medical treatment;

- Failing to provide Plaintiff with appropriate supervision given his medical needs and suicidal ideation;

- Failing to properly address Plaintiff's immediate suicide risk, recklessly disregarding Plaintiff's suicidal history, and Plaintiff's health and safety;

- Failing to promptly respond to Plaintiff's recognizable medical emergency in reckless disregard and deliberate indifference to Plaintiff's health and safety;

- Failing to place Plaintiff in a safe environment so that he could not harm himself or others;

- Failing to properly supervise Plaintiff throughout the early hours of September 4, 2022, knowing the risk Plaintiff posed to himself;

- Failing to remove objects from Plaintiff's room that posed a risk to Plaintiff's safety including, but not limited to, underwear with an elastic band.

- Failing to act in other ways that exposed Plaintiff to a known, extreme risk to his health and safety that may or will become known during discovery.

67.    As a direct and proximate result of the aforementioned conduct and omissions of Defendants, Plaintiff was deprived of his constitutionally protected rights as described above and suffered severe and permanent brain injuries, pain and suffering, medical bills and costs, and economic damages.

WHEREFORE, Plaintiff requests the following relief:

- Extreme pain and suffering and mental health and emotional damages resulting from Defendants' acts and omissions;

- Reasonable medical expenses;

- Compensatory and punitive damages;

- Any and all other damages otherwise recoverable under 42 U.S.C. §§ 1983 and 1988, including an award of attorney fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, including punitive damages under 42 U.S.C. § 42, in excess of $75,000.00 together with interest, costs and attorney's fees.

## COUNT II - *MONELL* CLAIM
(As to Defendant County of Kent & Defendant Kent County Community Mental Health Authority)

68.    Plaintiff hereby re-alleges each and every allegation contained in preceding paragraphs of this Complaint as if fully stated herein.

69.    Pursuant to 42 U.S.C. § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution, Defendants owed Plaintiff certain duties to properly supervise, monitor and train its correctional officers and staff so

as to monitor and supervise the jail's prisoners so that they would detect serious medical conditions and facilitate prompt and immediate medical attention and/or transport to a hospital ER or mental health facility.

70.    That Defendant, in its representative and official capacity, has maintained a custom and policy of improper training and supervision of its jail employees. Defendant is not protected by governmental immunity when following a policy that deprives individuals of their constitutional rights. *Monell v N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 692 (1978).

71.    Defendant owed Plaintiff the following duties and obligations:

- To use due care and caution;

- To adequately and properly create and promulgate guidelines and policies that comply with the requirements of 42 U.S.C. § 1983 regarding the incarceration of prisoners and the supervision of prisoners, especially those who are mentally and emotionally and physically unstable and especially those who are diagnosed as having psychiatric or psychological problems;

- To adequately and properly create and promulgate guidelines and policies that comply with the requirements of 42 U.S.C. § 1983 regarding the incarceration of prisoners who have threatened self-injury or suicide to ensure that staff can immediately and appropriately respond and act when a prisoner is in distress and has threatened self-injury or suicide;

- To adequately and properly train and supervise correction officers and employees of the Kent County Juvenile Detention Center under Defendant's supervision on the proper method of supervising prisoners and providing for their medical needs and on effectively controlling prisoners who have or are suspected to have psychological or psychiatric problems; and

14

- To avoid hiring or selecting individuals who Defendant knows or should know are incapable of performing their responsibilities or who are likely to misuse or abuse the power conferred on them as employees of the Kent County Juvenile Center.

72. Defendant breached these duties via its policies, procedures, regulations, customs and/or lack of training and thus exhibited a reckless indifference toward its prisoners, and Plaintiff specifically, in the following ways, including but not limited to:

- Defendant's failure to staff the jail with competent medical personnel;

- Defendant's failure to monitor their correctional officers and medical personnel to ensure that they adequately monitor and supervise prisoners who have serious medical needs;

- Defendant's failure to have proper policies and procedures, and training to deal with suicidal prisoners and ensure that the policies and/or procedures are followed, which include serial examinations by competent and licensed medical and mental health personnel like RNs, Psychologists and/or Doctors as well as its failure to ensure the correctional officers conduct timely and adequate rounds and record their observations of the prisoners;

- Defendant's failure to require that an RN, Doctor or Mental Health Professional perform a full and complete examination of a suicidal prisoner, secluded in an isolated cell, at least once per day;

- Defendant's failure to have proper policies and procedures, and training to deal with prisoners who have threatened self-injury or suicide to insure that Kent County Juvenile Detention Center staff personnel can immediately and appropriately respond and

act when a prisoner is distress and has threatened self-injury or
suicide;

- Defendant's failure to fully investigate and discipline its
correctional officers and/or medical/mental health personnel
who do not abide by policies and procedures relative to providing
medical care for serious conditions; and,

- All other breaches learned through the course of discovery.

73.     Defendant trained its officials and/or employees and agents in such a
reckless and grossly negligent matter, that it was inevitable that the officials would
place a suicidal prisoner in a place where he would not be supervised when it was
obvious that such a prisoner needed constant supervision. Notwithstanding
Plaintiff's contemplation of suicide and request for help, Defendant repeatedly
acquiesced in the continued practice of not placing potentially suicidal prisoners,
such as Plaintiff, under close supervision and acquiesced in the repeated and
continued practice of not adequately treating suicidal prisoners in obvious need of
treatment.

74.     The failure of the Defendant to provide training and supervision
regarding the prevention of suicides amounts to deliberate indifference to the safety
and lives of the prisoners of the Kent County Juvenile Detention Center and
particularly Plaintiff.

75.     Defendant knew or in the exercise of reasonable care should have
known that individual jail officials had engaged in misconduct and other violations

16

of the constitutional rights of prisoners at the Kent County Juvenile Detention Center, more specifically of Plaintiff.

76.    Defendant failed to properly investigate the improper practices and to supervise and train the jail officials at the Kent County Juvenile Detention Center.

77.    As a direct and proximate result of the above cited violations of Plaintiff's civil rights by Defendants, Plaintiff will continue to suffer damages in the future, including, but not limited to:

- Reasonable compensation for the pain and suffering undergone by Plaintiff;

- Compensatory and punitive damages; and

- Any and all other damages otherwise recoverable under USC Section 1983 and Section 1988.

## COUNT III
## FALIURE TO INTERVENE VIOLATION PURSUANT TO 42 U.S.C. § 1983
### *(Against Individual Defendants)*

78.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

79.    Each individual Defendant observed the other individual Defendants engage in the violation of Plaintiffs' rights and had the ability and opportunity to intervene but chose not to.

80.    The individual Defendants had reason to know that constitutional violations, as described above, would occur or were occurring, had the opportunity and the means to prevent the constitutional violations, but failed to do so.

81.    Each individual Defendant observed the other Defendants engaging in unconstitutional conduct as described herein and had the opportunity to prevent it, but chose not to.

82.    As a direct and proximate cause and consequence of the unconstitutional acts described above, Plaintiff suffered and continues to suffer injuries, damages and losses as set forth herein.

83.    Plaintiff is entitled to declaratory relief, compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT IV
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## FAILURE TO SUPERVISE
### *(Against Defendants Cavagnetto, Price and Organ)*

84.    Plaintiff incorporates, by reference, each and every allegation as though fully stated herein.

85.    A supervisor is individually liable in his personal capacity for the constitutional violations committed by his subordinates if he at least implicitly authorizes, approves, or knowingly acquiesces in the unconstitutional conduct of the subordinate.

86.    In this case, Defendants Cavagnetto, Price, and Organ were at all

pertinent times the direct supervisors of the other individual Defendants.

87.    By turning a willfully blind eye and/or participating in the unconstitutional conduct complained of herein, Defendants Cavagnetto, Price and Organ demonstrated that they at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct.

88.    Defendants Cavagnetto, Price, and Organ are individually liable for the constitutional violations committed by their subordinates.

89.    As a direct and proximate cause and consequence of the unconstitutional acts described above, Plaintiff suffered and continue to suffer injuries, damages and losses as set forth herein.

90.    Plaintiff is entitled to declaratory relief, compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, including punitive damages under 42 U.S.C. § 42, in excess of $75,000.00 together with interest, costs and attorney's fees.

## **DEMAND FOR RELIEF**

Plaintiff requests that this Court:

   a.   Assert jurisdiction over this matter;

   b.   Enter judgment in favor of Plaintiff and against Defendants;

   c.   Award Plaintiff compensatory and punitive damages;

d.  Award costs and attorneys' fees pursuant to 42 U.S.C. § 1988 and

12205; and

e.  Grant other appropriate relief.


Respectfully submitted,

/s/ *Zachary T. Runyan*
Zachary T. Runyan (P83671)
**Runyan Law Group**
31211 Jefferson Ave.
St. Clair Shores, MI 48082
(248)-341-0794
Zrunyan@runyanlawgroup.com

Dated:  August 22, 2025

## <u>JURY DEMAND</u>

Plaintiff, by and through counsel, hereby requests a trial by jury in the above-captioned matter.

Respectfully submitted,

/s/ *Zachary T. Runyan*
Zachary T. Runyan (P83671)
**Runyan Law Group**
31211 Jefferson Ave.
St. Clair Shores, MI 48082
(248)-341-0794
Zrunyan@runyanlawgroup.com

Dated: August 22, 2025